OPINION
Defendant-appellant, Timothy W. Bart, appeals the decision of the Clinton County Court of Common Pleas to grant permanent custody of his son, Zachary Huddleston, to the Clinton County Children Services Board ("CCCSB"). We affirm the decision of the trial court.
On December 19, 1997, Debbie Huddleston voluntarily placed Zachary, born November 27, 1997, in the temporary custody of CCCSB. The child was returned to Ms. Huddleston on or about January 20, 1998. On January 23, 1998, Ms. Huddleston returned the child to CCCSB which then filed a complaint alleging that Zachary was a dependent child. The trial court granted CCCSB emergency temporary custody on the same day. On February 4, 1998, Ms. Huddleston informed the trial court that appellant was Zachary's natural father. On April 2, 1998, the trial court found that Zachary was a dependent child and continued temporary custody with the Board.
On April 15, 1998, the trial court ordered appellant, who was at the time incarcerated at the Pickaway Correctional Institution, to undergo genetic testing to determine parentage. Appellant was determined to be Zachary's natural father. On September 30, 1998, CCCSB filed for permanent custody of Zachary. A permanent custody hearing occurred on December 21, 1998. Ms. Huddleston "consented"[1] to permanent custody and did not testify at the final hearing. Appellant did contest the motion and testified on his behalf. After considering all the evidence, the trial court granted the permanent custody motion of CCCSB. From this decision, appellant filed a timely notice of appeal and presents one assignment of error for our review:
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF ZACHARY HUDDLESTON TO THE CLINTON COUNTY CHILDREN'S SERVICES BOARD.
Appellant argues that the trial court erred in granting permanent custody to CCCSB. Specifically, appellant claims the trial court misinterpreted R.C. 2151.414(E)(8)[2] in rendering its decision. For the reasons given below, we find that the trial court's decision is supported by clear and convincing evidence and the trial court applied the permanent custody statute, including the factor codified in R.C. 2151.414(E)(8), in a legally correct manner.
We begin with the constitutional principle that natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the agency must demonstrate that any of the following apply:
 (1) The child is not abandoned or orphaned and that the child cannot be placed within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
The trial court, at a permanent custody hearing, shall consider all factors relevant to the child's best interest. R.C.2151.414(D). The factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressly directed to the child or through the guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure placement and whether the type of placement can be achieved without a grant of permanent custody to the agency.
 Id.
Liz McAllister, adoption coordinator for CCCSB, testified that the likelihood of adoption for Zachary was "extremely high." McAllister testified that "[a]doption entitles a child to be part permanently of a family and provide that child a permanent and secure placement." [sic] The record does not indicate that any relatives of Zachary are potential guardians for him. Therefore, the trial court properly concluded that a permanent placement (i.e. adoption) could not be achieved without the permanent custody motion being granted. R.C. 2151.414(D)(4). In addition, after interviewing the relevant parties, the guardian ad litem
recommended the permanent custody motion of CCCSB be granted. R.C. 2151.414(D)(2). We find that the record supports the trial court's finding that granting the permanent custody motion of CCCSB was in the best interest of Zachary.
When granting permanent custody to a state agency, the trial court must also find that one of the factors enumerated in R.C.2151.414(E) exists. In re William S. (1996), 75 Ohio St.3d 95, syllabus.[3] The factors, in relevant part, are as follows:
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *.
 (8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
(12) Any other factor the court considers relevant.
 At the time of the permanent custody hearing, appellant was incarcerated for felonious assault, an incident in which appellant hit a victim with a beer mug. Appellant received a two-year sentence. Appellant was released approximately four months after the date of the permanent custody hearing. Appellant was previously incarcerated for "some threats to violence," the victim being his ex-wife. In addition, appellant's ex-wife had made numerous allegations of domestic violence, but appellant denied these allegations in his testimony. On or about September 17, 1993, appellant was convicted of assault, for which he served ninety days. In August 1991, appellant was sentenced to one year for breaking and entering. In November 1994, appellant was sentenced to six months in prison for grand theft.
In November 1992, appellant was diagnosed as an alcoholic by "the Center of Clinton and Warren Counties." Appellant completed the program in December 1992, but relapsed. Appellant testified that he reentered the program "several times," but "just simply quit." Appellant testified that he had been sober for twenty months, the same amount of time as appellant's most recent incarceration.
Appellant planned on temporarily living with his mother upon being released from prison. Appellant testified that his mother could not take responsibility in helping to raise Zachary due to illness and "financial problems." Appellant could not name any family members who could assist him in acting as Zachary's parent.
The reality is appellant has had multiple convictions involving violence which led to incarceration. Appellant argues that the trial court should not have considered these facts in concluding that Zachary cannot be placed with appellant within a reasonable time. Specifically, appellant claims that R.C.2151.414(E)(8) entitles the trial court to evaluate only appellant's actions since Zachary has been born. We find the plain meaning of the statute allows the trial court to consider all of appellant's past incarceration. R.C. 2151.414(E)(8) allows the trial court to consider whether "repeated incarceration prevents the parent from providing care for the child." See In reNoe (July 21, 1997), Butler App. Nos. CA96-10-217, CA96-11-224, unreported. The trial court properly evaluated whether appellant's past incarceration demonstrated that he would not be able to provide care for Zachary in the future. Appellant's past alcoholism and lack of family support were also relevant factors in the record. R.C. 2151.414(E)(12).
We find that the record supports the decision of the trial court that Zachary cannot be placed with either parent within a reasonable time and that granting the permanent custody motion of CCCSB was in the best interest of Zachary.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] Although Debbie Huddleston was not present at the hearing, the trial court heard evidence and made a finding that Zachary could not be placed with her within a reasonable time. Ms. Huddleston has not appealed the trial court's decision.
[2] R.C. 2151.414(E)(8) states that "the parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child[.]"
[3] When William S. was decided, R.C. 2151.414(E) included eight specific factors. R.C. 2151.414(E) was subsequently revised to include twelve factors. Factor twelve is "[any] other factor the court deems relevant."